[Civ. No. 17167. Second Dist., Div. Three. July 30, 1949.]

Guardianship of the Person and Estate of ALLIE WALTERS, an Incompetent Person. ALLIE WALTERS SACKS, an Incompetent Person, etc., Appellant, v. L. C. RAUCH, as Guardian, etc., Respondent.

S. V. O. Prichard, Bodkin, Breslin & Luddy and Morris Lavine for Appellant.

R. R. Sleeper and Harold A. Slane for Respondent.

SHINN, P. J.—On March 3, 1949, Allie Walters Sacks was adjudged to be incompetent, L. C. Rauch was appointed as the guardian of her estate and John C. Packard guardian of her person. Thereafter, Morris Lavine was appointed as guardian *ad litem* for the purpose of prosecuting an appeal from the order. Such an appeal has been taken and is now pending. L. C. Rauch, having qualified as guardian, petitioned the court for instructions that he take possession of the property of the estate for the purpose of preventing injury and loss thereto. Mrs. Sacks opposed the application, requesting that her property be allowed to remain in the management of her agents, R. A. Rowan and Company.

The matter was heard upon the verified petitions and affidavits and on April 22d, the court decided that certain powers of the guardian should be exercised for the purpose of preventing injury or loss. L. C. Rauch was then directed "to take possession of all of the property of said ward, both real and personal, in the State of California"; to collect rents and manage the rental property of the estate "but not to make any improvements or substantial repairs without first reporting to the court on notice to the other interested parties, and receiving instructions therefor"; to pay a monthly allowance for the support of the ward; to pay the costs of the pending appeal; to inventory the property of the estate and all claims against the ward; and to prepare a schedule of all pending litigation to which the ward is a party with recommendations to the court as to what steps should be taken therein. John C. Packard, guardian of the person of the ward was directed to receive the monthly allowance from the guardian of the estate and use it to maintain and support the ward.

A notice of appeal was given by Lavine as guardian *ad litem* and another, signed by Mrs. Sacks, appealing "from that portion of the order of directions subsequent to appeal, directing L. C. Rauch as Guardian of the estate of Allie Walter Sacks to exercise his powers of guardianship, as follows: To take possession of all property, real and personal, of said ward, in the State of California."

Rauch gave notice of a motion to dismiss the appeal from the order of April 22d. Mrs. Sacks filed a petition for a writ of supersedeas to stay proceedings under the order. A demurrer to the petition for writ of supersedeas having been filed by Rauch, the motion to dismiss and the application for the writ were heard and submitted.

In support of the motion to dismiss it is contended that the order is not one from which an appeal is allowed. The point is not well taken. An appeal may be taken from an order instructing or directing a guardian. (Prob. Code, § 1630.)

It is urged that Lavine under his appointment as guardian *ad litem* to appeal from the order appointing a guardian did not have authority to appeal from the subsequent order instructing the guardian. This point also is unsustainable. The order of appointment carried with it authority to take whatever steps were necessary to make the appeal effective. The later order was in such broad terms as to vest in the guardian practically complete powers over the estate of Mrs. Sacks notwithstanding the pending appeal from the order of appointment. If the later order was deemed by the guardian *ad litem* to be an improper one and if it was detrimental to the interests which he was bound to protect he had not only the authority but the duty to appeal from it. It was clearly the right of Mrs. Sacks to have the *status quo* maintained if it could be done without detriment to her estate.

Moreover, Mrs. Sacks could, herself, appeal from the order appointing a guardian (see *Matter of Moss,* 120 Cal. 695 [53 P. 357]; *Sacks* v. *Superior Court,* 31 Cal.2d 537 [190 P.2d 602]; *Guardianship of Gilman,* 23 Cal.2d 862 [147 P.2d 530]) and undoubtedly had a right to appeal from the incidental and related order directing the guardian to take possession of her property. (See *Coburn* v. *Hines,* 161 Cal. 685 [120 P. 26].) The appeal is properly before us and the motion to dismiss should be denied.

The application for a writ of supersedeas presents the question whether conditions were shown to exist which justified the order placing the guardian in possession of the real and personal property. The authority of the court to make such orders is derived solely from section 1631 of the Probate Code which reads as follows: ''Effect of appeal. An appeal from an order appointing a guardian for an insane or incompetent person shall stay the power of the

guardian, except that, for the purpose of preventing injury or loss to person or property, the court making the appointment may direct the exercise of the powers of the guardian, from time to time, as though no appeal were pending, and all acts of the guardian pursuant to such directions shall be valid, irrespective of the result of the appeal.'' ▇▇ It is clear to us that there was no showing of reasonable necessity for an order directing the guardian to take possession of the property. We think this appears from the order itself, considered with the reasons that were urged for the order. The petitions and affidavits which were before the trial court are set forth in the petition for writ of supersedeas. In brief they are the following: Mrs. Sacks is possessed of a considerable amount of real property, much of which is rental property located in the beach area. Her estate is of the value of some $400,000; she is married and residing with her husband, whose willingness and competency to assist in the management of her affairs is not here questioned; since on or about August, 1947, R. A. Rowan and Company has acted as her agent in the management and operation of her real estate, collecting her rent, making repairs and paying the necessary expenses. Under the firm's management the income from rentals has increased from $2,044.50 to $2,682.00 per month. The firm admittedly is reliable, experienced, and competent to manage the properties, has done so efficiently, and has made use of available funds to conserve and protect the same. The charges for these services are 5 per cent of the gross rentals collected and 3 per cent for negotiation of leases. The appointment of the Rowan firm as agent and cooperation by Mrs. Sacks with the firm over a two-year period is an exhibition of good business judgment on her part. So far as disclosed by the petition and affidavits of Rauch the principal purpose of the application for the order appears to have been the desire to replace Rowan and Company as the managers of Mrs. Sacks' real property. No showing whatever was made or attempted to be made that Mrs. Sacks has acted or is likely to act in an improvident manner, or that she is likely to be imposed upon. No evidence was produced that her personal estate is in danger of being wasted or dissipated. In the petition and affidavits of Rauch it was represented to the court that numerous of the houses of Mrs. Sacks located in the beach area were in need of repairs and alterations. It was also shown that notices had been received from the health department demanding the correction of

some of these conditions. It was not shown, however, that loss or injury has been or is about to be sustained by reason of the conditions described through loss of rentals or otherwise. It is evident that the court did not believe that any emergency repairs were required since none were ordered to be made. It was shown without dispute that repairs have been made to the buildings by Rowan and Company to the extent that funds have been available therefor and that the demands of the health department have been met from time to time. In short, the uncontradicted showing was that Mrs. Sacks' real properties are, and for almost two years last past, have been under first-class management.

The petition of Rauch listed items of indebtedness for taxes, assessments, and upon other accounts but there was no showing whatever that these would not be taken care of in due course or that the estate was threatened with loss or injury by reason thereof. It was alleged in the petition that Mrs. Sacks is prosecuting two actions for the recovery of real and personal property and that she was then defendant in three other actions, one, for the foreclosure of a trust deed of $22,000, another for the recovery of $15,000 as attorneys' fees, and a third, a suit for attorneys' fees. It was also alleged that Mrs. Sacks was interested in a certain estate in course of probate and the petition contained general allegations to the effect that it was necessary that a guardian be substituted as a party to each of said actions in the place of Mrs. Sacks and that he employ attorneys to prosecute and defend said actions. It was not alleged that Mrs. Sacks is not represented by competent attorneys, satisfactory to her, nor has any reason been advanced why her attorneys should be replaced with others selected by the guardian. It may also be mentioned that at the hearing before us it was stated and not questioned that the three actions against Mrs. Sacks have been disposed of, the first two by dismissal, and the third by judgment. It was alleged in the affidavit of Mrs. Sacks that Rauch acted as her guardian for a period of a year under an invalid appointment; that he has an action pending against her for the recovery of $60,000 and that she has an action pending against him for the recovery of approximately $365,000 upon claims for money and other claims arising out of his former activities as guardian. The allegations in the petitions of Rauch and in his affidavit of threatened injury and loss to the estate of Mrs. Sacks consist of mere assertions that injury and loss will result unless he is authorized to take over the

management and control of Mrs. Sacks' affairs. These allegations are not borne out by the facts disclosed at the hearing.

██ The further contention is made that since the appeal has been taken only from that part of the order which directs the guardian to take possession of the real and personal property, all other provisions of the order remain in full force and effect and that therefore it would be an idle act to stay enforcement of the order. The line of argument appears to be that even though the portion of the order appealed from should be rendered inoperative by reason of a stay the remainder of the order would nevertheless be complied with by the guardian. Obviously, the reverse is true with respect to the collection and disbursement of money by the guardian. Without authority to take possession of either the real or personal property he would neither collect money nor disburse it. A writ of supersedeas will operate so as to require the guardian to surrender to Mrs. Sacks all real and personal property which he has taken into his possession and retained under the order in question and to refrain from interfering with the management of the real property by Mrs. Sacks and her agents.

██ We think it is clearly a situation in which a writ should issue. It appears from a reading of section 1631 that its purpose is to insure to one who has been declared incompetent the right to manage his own property pending an appeal from the order unless he is proven incompetent to do so during that period and that, even then, control of his estate will not be taken from him and vested in a guardian except to the extent that the same is shown to be necessary in order to avoid loss or injury. ██ If the evidence is insufficient to support a finding of probable loss or injury to the estate pending the appeal, the court is without authority to place the management of the estate in the hands of the guardian. To do so without sufficient showing, or any showing of necessity, would defeat the statutory right of the alleged incompetent to maintain his affairs *in statu quo* until the determination of his appeal from the order of appointment. We conclude that there was no basis in fact disclosed by the evidence to justify the order directing the guardian to take possession of Mrs. Sacks' real and personal property. The validity of the terms of the order which direct the guardian to inventory the property and the claims against the ward, and to prepare a schedule of all pending litigation is not now in question. A writ of supersedeas will issue as prayed.

It will operate to stay all action by L. C. Rauch, as guardian, to take or to retain possession of real or personal property of Mrs. Sacks until the final determination of the appeal from the order appointing a guardian and from the order of April 22, 1949, or until the further order of the court.

Motion to dismiss denied; demurrer overruled. Let the writ issue.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied August 15, 1949, and respondent's petition for a hearing by the Supreme Court was denied September 26, 1949.